CHARLES ADAMS, JR. *vs.* INHABITANTS OF SWANSEA.

Suffolk. Nov. 23, 1874. — Jan. 9, 1875. AMES & DEVENS, JJ., absent.

On the issue whether a female pauper had a settlement in the town of S., derived from her grandfather, there was evidence that the grandfather was born in that town in 1759. An aged witness testified that he knew a lot of land near the line between the towns of R. and S., which he was accustomed in his youth to see and hear people of the town point out and speak of as the lot of the father of said grandfather, the lot where he lived. It also appeared in evidence that in 1790 a part of the town of S. had been set off and made another town ; and it was provided by statute that persons born in the limits of the new town, and becoming chargeable for support, should be the poor thereof. *Held*, that the burden of proof was on the plaintiff to show that the pauper's grandfather had a settlement within the present limits of the town of S. ; and that there was no evidence to warrant a judge, who tried the case without a jury, in so finding.

CONTRACT by the treasurer of the Commonwealth to recover the amount paid by the Commonwealth to the state lunatic hospital at Taunton, for the support of Mary Handy, an insane pauper. Trial in the Superior Court, before *Brigham*, C. J., without a jury, who, after judgment for the plaintiff, allowed a bill of exceptions, the only parts of which, now material, were as follows :

Mary Handy was unmarried, and when committed to the asylum neither her father, mother, grandparents, or great-grandparents were living. She was the daughter of John Handy, who

was the son of Russell Handy, who was the son of Robert Handy. The plaintiff claimed that Mary Handy's legal settlement was in Swansea, through the birth of her grandfather, Russell Handy, in that town, in the year 1759. The only evidence of the birth-place of Russell Handy was a record of the town of Swansea, produced by the clerk thereof, in which appeared this entry : " Russell Handy, son of Robert Handy and Rachel, his wife, was born April ye 1st, 1759." The only other evidence of Russell Handy's birth, of the residence of Robert Handy, or of Russell Handy, in that part of Swansea, which, since 1790, when the town of Somerset was incorporated, has constituted the town of Swansea, was afforded by the testimony of William Wood, now of Swansea, seventy-two years of age, and a son of a brother of Russell Handy's wife, who testified that he knew of a lot of land near the line between the towns of Rehoboth and Swansea, which he was accustomed, in his youth, to see and hear people of the town point out and speak of as the " Robert Handy lot," and " the lot where Robert Handy lived. *

The defendant objected that the evidence was not sufficient to fix the settlement of Mary Handy in the present limits of Swansea rather than in Somerset, which was formerly a part of Swansea. The judge declined so to rule, but found that Mary Handy's legal settlement, for the purposes of this action, through the birth of her grandfather, Russell Handy, in Swansea, in 1759, and his residence, and the residence of his father, Robert Handy, there, as testified of by William Wood, was in Swansea, and the defend-ant was chargeable for the support of Mary Handy while in the lunatic hospital, as an insane person. The defendant alleged exceptions.

*J. Brown,* for the defendant. 1. The legal evidence to show that Mary Handy's settlement was in the town of Swansea was not sufficient to establish that fact. It was not shown that Robert Handy, or Russell Handy his son, born in wedlock April 1, 1759, ever gained a settlement in Swansea by residence, as required by law. By the St. of 1692, (4 W. & M.) Anc. Chart. 251, a residence of three months in a town, without being warned out, gave a set-tlement; and by the St. of 1701, (13 W. 3) Anc. Chart. 364, the

---

* The town of Somerset does not adjoin Rehoboth.

term was extended to twelve months, and so the law continued until April 10, 1767. From that time until the St. of 1789, *c.* 14, there was no mode by which a settlement could be gained except by the approbation of the town. There was no proof that Robert or Russell Handy, or any of their posterity, ever resided in Swansea a single month. They therefore never acquired a settlement by residence as required by the law then in force. Neither does it appear affirmatively that any of them were citizens of the town or state. The absence of evidence that a tax was ever paid by any of them is a significant fact.

It has never been held in this Commonwealth that the accident of birth within the corporate limits of a town gave a settlement therein. By the common law, bastard children have their settlement in the parish where born, but " all other children have their primary settlement in their father's parish." 1 Bl. Com. 363, 459. But in the case of bastards there are many exceptions to this rule, such as cases of fraud, vagrancy, birth in a licensed hospital, &c., in which cases their settlements are held to be where the mother belongs. But Russell Handy, being a legitimate child, had the settlement of his parents. It would be a forced construction of the statutes in force in 1759 to hold that an infant breathing the first few days or weeks of its existence within the corporate limits of a town gained a settlement, while adults must reside there one year without a warning. At that time, in such cases as this, what would make a town chargeable for the support of a person was fixed by statute here, and not by the common law of England. It was held, in the case of *Somerset* v. *Dighton*, 12 Mass. 383, and in *Danvers* v. *Boston*, 10 Pick. 513, that the residence of a minor in a town for more than one year prior to the St. of 1767, without being warned, gave no settlement there. And after April 10, 1767, birth in a place gave no settlement there. *Blackstone* v. *Seekonk*, 8 Cush. 75. *Shirley* v. *Watertown*, 3 Mass. 322. In *Berkley* v. *Somerset*, 16 Mass. 454, it was held that the son of a person who had been warned out of town gained a settlement in the town by a residence of one year in the town after he came of age, prior to 1767, and no suggestion was made that his birth, which happened there, gave him a settlement. In *Newton* v. *Braintree*, 14 Mass. 382, it is impliedly conceded that birth in a place prior to April 10, 1767, gave no settle-

ment, but the illegitimate child held and followed the settlement of the mother. There is no valid reason for holding that birth would not give a settlement in a place after the Statute of 1767 took effect, but that it would give it prior thereto; for in the one case settlement could only be acquired by approbation in town meeting, while in the other it could only be acquired by residence of one year. And these are the positive enactments of law and should fix the rule in regard to settlements, especially as there is no authenticated case where this court from the earliest times has held that a settlement could be held here except within the rules prescribed by statute. *Danvers* v. *Boston*, 10 Pick. 513.

2. The evidence of Wood, who was born forty-three years after Russell, and who testified as to what he had heard people say in regard to a place, at least half a century after the birth of Russell, was inadmissible. *Wilmington* v. *Burlington*, 4 Pick. 174. *Braintree* v. *Hingham*, 1 Pick. 245. If it were competent, it proved only that the lot was " near the line between the towns of Rehoboth and Swansea." It did not prove that the lot was in Swansea, neither did it prove that Robert Handy lived there a year prior to 1767, or at the birth of Russell, nor when he lived there. For aught that appeared, he might have lived there continuously from April 10, 1767 to 1789, and yet not gain a settlement by such residence, for an approbation of the town during that period was necessary to give a settlement. The legal evidence of settlement, therefore, rests upon the record of the birth of Russell Handy alone. *Hingham* v. *South Scituate*, 7 Gray, 229. *Monson* v. *Chester*, 22 Pick. 385.

3. If birth was sufficient to give settlement, the burden of proof was on the plaintiff to show affirmatively that the birth occurred in the present limits of Swansea instead of in Somerset. The burden of proof was therefore upon the plaintiff to show that the settlement of Russell Handy, whether by birth or his father's residence, was in the present limits of Swansea and not in Somerset. Having offered no competent evidence of that fact, the plaintiff fails to establish his case. *New Bedford* v. *Middleborough*, 16 Gray, 295.

*J. Willard*, for the plaintiff. The record of Russell Handy's birth was competent to show his settlement by birth in Swansea, in 1759; and such a mode of settlement was not barred unti.

the St. of 1767, (7 Geo. 3,) Anc. Chart. 662. *Blackstone* v. *Seekonk*, 8 Cush. 75, 76. Leavitt's Summary, 9. 1 Bl. Com. 362. This descended to Mary Handy as a derivative settlement, and warranted the judge's finding. 1 Bl. Com. 363. St. 1793, c. 34. The uncontradicted evidence of Wood tended also to show such a residence by Robert Handy as gave him a settlement by residence under 12 & 13 Wm. 3. Leavitt's Summary, 9-16. It also tended to show that the settlement was in the present limits of Swansea, for which it was competent evidence. *Kellogg* v. *Smith*, 7 Cush. 375, 378. *Thomas* v. *Jenkins*, 6 A. & E. 525. In *Hall* v. *Mayo*, 97 Mass. 416, and similar cases, the evidence rejected was of the exact position of a certain house, to fix a private boundary line. Here Wood's testimony was, in effect, to fix the line between Somerset and Swansea.

COLT, J. The plaintiff claims that Mary Handy, to recover for whose board at the lunatic hospital this action is brought, had her legal settlement in the present town of Swansea, acquired through the birth of her grandfather Russell Handy, the son of Robert, in that town in the year 1759. The present adjoining town of Somerset was incorporated in 1790, and embraces territory which till then had been part of Swansea. It was provided in the act of incorporation of Somerset, that those born in the limits of that town, who should thereafter become chargeable for support, and had not gained a legal settlement in any other town, should be the poor thereof; and, by the act of 1793, c. 9, that those who, before the passage of the prior act, had gained their settlement by birth or otherwise in that part of Swansea which now constitutes the town of Somerset, in case they had already, or should thereafter, become chargeable for support, should be considered the proper poor of the latter town. The burden of proof was therefore upon the plaintiff to show that the settlement of Russell was acquired within the present limits of Swansea. The case was tried without a jury, and the findings of the judge are conclusive as to all facts, where there is competent evidence to warrant the result. It is not a question of the weight or sufficiency of the evidence. The difficulty is that there was in this case no competent evidence that the birth of Russell, if allowed to be sufficient at that time to give him a settlement, was within the present limits of Swansea.

The only evidence relied on was that of an aged witness who testified that he knew of a lot of land, near the town line, which in his youth was spoken of and pointed out to him by the people of the town as the Robert Handy lot, and the lot where he lived. This was hearsay evidence, which comes within none of the exceptions to the general rule for its exclusion. The question was not one of pedigree ; nor was it one of boundary, which, if public, or in its nature public, may be proved by reputation, or, if private, by the declarations of deceased owners, accompanying the act of pointing out a line. Its sole purpose was to fix the location of the lot where Robert Handy, the father of Russell, lived at some period in his life. If competent for such purpose, it is difficult to see how, with the aid of any known legal presumption, it tended to fix the birthplace of Russell on that lot, or that Robert lived there at the time. It is settled that hearsay is not admissible to prove the place of a person's birth ; *Wilmington* v. *Burlington,* 4 Pick. 174 ; that the declaration of a pauper as to where he was born, or that he was warned out of town, cannot be admitted ; *Braintree* v. *Hingham,* 1 Pick. 245 ; and that family tradition or statements on the land as to the place where a house formerly stood, to which reference was made in a deed, for the purpose of locating a line, are not competent evidence. *Hall* v. *Mayo,* 97 Mass. 416. *Long* v. *Colton, ante,* 414.

Unless the settlement of Russell can be established within the present limits of the defendant town, this action fails, and it is unnecessary to consider the other questions raised by the defendant's exceptions.                                   *Exceptions sustained.*