## ELIAS F. PECK *vs.* BENJAMIN F. CLARK.

Berkshire.  Sept. 15. — Oct. 21, 1886.  DEVENS, W. ALLEN, & C. ALLEN, JJ., absent.

In an action for the conversion of the waters of a spring, it appeared that the plaintiff owned the right, reserved by the grantor in a deed of land, of "the spring of water on said premises;" and that a stream of water running on the land was the outlet of a spring a short distance off on the adjoining land, and was finally lost in the ground. The plaintiff's evidence tended to show that there was no other spring; and he introduced the evidence of persons who had long lived in the vicinity of the stream and known of it, that it was called a spring. *Held,* that this evidence was admissible.

In an action for the conversion of the waters of a spring, it appeared that the plaintiff owned the right, reserved by the grantor in a deed of land, of "the spring of water on said premises;" and that a stream of water running on the land was the outlet of a spring a short distance off on the adjoining land, and was finally lost in the ground. The plaintiff offered in evidence the declarations of his deceased grantor, made on the land when he conveyed to the plaintiff, that he intended to carry this stream of water off the land, and that he called it a spring. *Held,* that this evidence was inadmissible.

In an action for the conversion of the waters of a spring, it appeared that the plaintiff owned the right, reserved by the grantor in a deed of land, of "the spring of water on said premises;" and that a stream of water running on the land was the outlet of a spring a short distance off on the adjoining land, and was finally lost in the ground. The grantee of the land testified for the plaintiff that there was no other water or spring on the land at the time he purchased it, or during his ownership, than this little stream of water; and that he understood, at the time he purchased, that this stream was the water reserved in the deed to him. *Held,* that the defendant had no ground of exception to the admission of this evidence.

If a deed of land reserves to the grantor, his heirs and assigns, "the spring of water on said premises, and the right to lay down, repair, and rebuild aqueduct and pipe, and convey said water off from said premises, together with the right to fix said spring and do any other act or thing necessary for taking off said water," and a grantee of the land subject to the reservation puts in an aqueduct, which diverts the water continuously, an owner of the right reserved to the grantor is entitled, in an action against such grantee for an interference with his rights, at least to nominal damages.

At the trial of an action for the conversion of the waters of a spring, by means of an aqueduct, if the ruling of the judge requires the jury to find that the defendant put in the aqueduct and withdrew the water without the plaintiff's consent, the defendant is not entitled, after the charge to the jury is finished, to single out particular circumstances tending to show consent, and require the judge to comment on them specially.

TORT for the conversion of the waters of a spring, and for interfering with the plaintiff's right to use the same. Trial in

the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff, by mesne conveyances, owns the rights reserved in a deed of Charles F. Benton to Jane M. Darby, dated March 1, 1867, by which Benton conveyed to Darby a certain parcel of land in Great Barrington, " reserving to myself, my heirs and assigns, the spring of water on said premises, and the right to lay down, repair, and rebuild aqueduct and pipe, and convey said water off from said premises, together with the right to fix said spring and do any other act or thing necessary for taking off said water." The plaintiff's deed was dated April 9, 1869. On March 29, 1877, Jane M. Darby, by her deed, conveyed the Darby lot, subject to said reservation, to the defendant; and the defendant owned the premises subject to said reservation until June 15, 1882, when he conveyed said lot to one Shepard, and Shepard conveyed to John E. Rogers, who owned the Darby lot under said conveyance, subject to the reservation in Benton's deed, at the time of the trial. The defendant, soon after he obtained his deed of Jane M. Darby, in the spring of 1877, and while he owned the Darby lot, dug a ditch on and from the Darby lot northerly to a highway, and thence easterly to another highway, and thence northerly on said last-named highway to his dwelling-house, and laid down therein logs and carried water from the stream of water on the Darby lot to his dwelling-house. About a year after said logs were laid, the plaintiff laid a pipe joined to said logs at the junction of said highways to a place in the highway in front of his house, by an understanding between him and the defendant, and took water through said pipes to his premises for two or three years; and sometimes, when the water was low and did not run down as far as said junction, the plaintiff would go up to the Darby lot and get water from a penstock put into the defendant's logs.

At the time of Benton's deed to Jane M. Darby, and ever since, there was running from the premises situate south of and above the Darby lot a small stream of water, having its rise on land of one Comstock, about one hundred rods south of the south line of the Darby lot, which ran northerly to the Darby lot and down on said lot ten rods, more or less, sometimes disappearing and then reappearing; but it could be heard running under the

rocks and stones, and it was finally lost by running into the sandy or gravelly land, and there wholly disappeared. Said stream had never been known to be wholly dried up, and was, at its largest condition, about three inches wide, but in the summer season it would about fill an inch pipe. Whatever the defendant did with the water, he did while he was owner of the soil, or under direction of Rogers at the time when Rogers owned it.

The plaintiff contended that " the spring of water " named in the reservation in Benton's deed, and under which he claimed, meant said stream of water; and he introduced the evidence of persons who had long lived in the vicinity of the stream and known of it, that it was called a spring. To this evidence the defendant objected as being incompetent, but the judge admitted it.

The plaintiff offered evidence to prove the declarations of Henry H. Peck, now deceased, the grantor of the plaintiff, made on the Darby lot when he conveyed it to the plaintiff. The defendant objected to this evidence; but the judge allowed the witness to state that Henry H. Peck said that he intended to carry this stream of water off the Darby lot, and that he called it a spring in speaking of it. The plaintiff also called Jane M. Darby, who testified, against the defendant's objection, that there was no other water or spring on the Darby lot at the time she purchased said lot, or during the time she owned it, than this little stream of water; and that she understood, at the time she purchased, that this little stream of water was the water reserved by Benton in his deed to her. The defendant excepted to the rulings of the judge admitting this evidence, and further contended that the language in the reservation was not ambiguous, and should be interpreted and construed by the court, and not left to the jury under such evidence, or any evidence; but the judge ruled that it should be submitted to the jury.

There was other evidence, not excepted to, introduced by both parties, as to whether there was or was not a spring or springs of water on the Darby lot other than the stream; but there was no evidence that there ever was a " spring of water," commonly known as a " spring," in the line of the stream, or within ten feet of it. There was no evidence offered by the plaintiff, or in the case, that the plaintiff, or any one under whom he holds,

ever located or attempted to locate his right to take the water off the Darby lot, up to the date of the writ, or to assert any right under the reservation excepting as above stated.

The plaintiff contended that the stream was the spring named in the reservation ; that the defendant's acts, in laying his logs and conducting the water of the stream off from the Darby lot, was an infringement and interruption of his rights under his title; and that he was entitled to nominal damages.

The judge, at the request of the plaintiff, instructed the jury as follows: " If the jury, under instructions given by the court, shall find that the reservation in the deed from Benton to Darby applied to the water supply claimed by the plaintiff, and if they shall find that the defendant, without the consent of the plaintiff, put in an aqueduct, and by means thereof diverted and took away the water or any part of said water supply from said Darby lot to other premises of the defendant, then the defendant violated the legal rights of the plaintiff, and it will be their duty to return a verdict in the plaintiff's favor, for at least nominal damages."

After the judge had concluded his charge to the jury, and not having instructed them as to the evidence of joint occupancy by the plaintiff and the defendant of the defendant's logs and the water running through them, the defendant asked the judge to instruct the jury as follows: " If the plaintiff knew of the defendant's laying his aqueduct at the time it was done, and made no objection at the time, and afterwards joined in the use of the water which ran through the same, he cannot recover in this action for such laying of the defendant's aqueduct, or its use." The judge declined to give this instruction, and instructed the jury no further after closing his charge to them.

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*H. J. Dunham & A. J. Waterman*, for the defendant.

*H. C. Joyner*, for the plaintiff.

HOLMES, J. 1. If there was no spring, properly so called, on the Darby lot, it may be doubted whether the reservation of " the spring of water on said premises " in the conveyance of that lot would not be taken to refer to the stream, without evidence in favor of such an interpretation. The stream was the

outlet of a spring a short distance off on the next lot. It hardly appeared as a stream to casual observation, and it was finally lost in the ground. Nothing would have been more natural than to describe it as a spring, and it cannot be contended seriously that such a slight inaccuracy of expression is to make inoperative words clearly intended to reserve something, assumed to be well known to, or easily recognized by, the parties, as is shown by the use of the definite article, — "the spring." The plaintiff's evidence tended to show that there was no other spring, and evidence that this water was called a spring in the neighborhood was admissible, although possibly superfluous.

2. The evidence that Peck, the plaintiff's grantor, now deceased, when he made his conveyance to the plaintiff, stated on the Darby lot that he intended to carry this stream off the Darby lot, and called it a spring, was admitted, we presume, as being in effect an identification of the spring attached to the land conveyed, and as falling within the principle of declarations as to boundaries. *Daggett* v. *Shaw*, 5 Met. 223. *Davis* v. *Sherman*, 7 Gray, 291. *Wood* v. *Foster*, 8 Allen, 24. *Long* v. *Colton*, 116 Mass. 414. *Hunnicutt* v. *Peyton*, 102 U. S. 333, 364. So far as these cases stand on the ground that such declarations are acts qualifying the party's possession, *Niles* v. *Patch*, 13 Gray, 254, 257, they do not apply to the identification of an easement. For, unless it be assumed that the easement identified and claimed is the one in fact attached to the dominant estate, the party making the declaration has no possession of it; and the assumption thus made to justify the admission of the evidence would be an assumption of the very fact which the evidence was admitted to prove. But it is more satisfactory perhaps to say, that the admission of such declarations has generally been regarded as an exception to the general rule against hearsay, and that we cannot extend the principle further than it has been carried by authority. We are not aware that it has ever been applied to a case like this. On this point, the exceptions must be sustained.

3. The testimony of Mrs. Darby, the original grantee subject to the reservation of the spring, that, at the time of her purchase and ownership, there was no other water or spring on the lot, was admissible, of course, as tending to show that the words

must have referred to this water. Her subsequent statement, that she understood at the time that this stream was the water reserved, seems to have been merely a statement of a conclusion from what she had already testified, and did not add to it. Whether standing alone it would have been admissible, if the suit had been against her, as an interpretation made by her against her own interest, and whether, if admissible against her, it would have been admissible against a purchaser from her without notice, are questions not fairly raised, we think, in this case.

4. The instruction to the jury was correct. It may be true that, so long as the plaintiff had not appropriated the water, he could not have sued the defendant for doing transitory acts, such as drawing water in pails or watering his cattle. But when the defendant put in an aqueduct, which diverted the water continuously, and which would interfere with the exercise of the plaintiff's rights whenever thereafter he sought to exercise them, he did an overt act of permanent effect, which amounted to a standing open denial of the plaintiff's right, and which would have extinguished it in twenty years to the extent of the water withdrawn. Nominal damages, at least, may always be recovered for such an act.

5. The ruling of the court required the jury to find that the defendant put in the aqueduct and withdrew the water without the plaintiff's consent. When the charge was finished, the defendant had no right to single out particular circumstances tending to show consent, and require the court to comment on them specially. Whether the plaintiff's making no objection to the aqueduct and afterward using water from it, if proved, would have amounted to anything more than evidence from which the jury might have inferred consent, we need not consider. The counsel for the defendant argues that the question should have been submitted to the jury, but his request was for a ruling that the supposed facts were a bar, as matter of law.

*Exceptions sustained.*