JOHN J. O'CONNELL *vs.* JOHN COX.

Middlesex.    January 18, 1901. — June 6, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Evidence,* Extrinsic affecting writings, Part of *res gestæ.    Boundary.*

The words "about thirty-two feet to D.'s land," used in describing a boundary in a deed, are ambiguous and suggest the existence of some monument or abuttal, which extrinsic evidence is admissible to fix. The practical construction put upon the deed by the parties in treating a certain fence as the boundary is such evidence.

In an action of tort in the nature of trespass *quare clausum,* to determine a disputed boundary, the defendant testified that his deed was delivered to him elsewhere than on the premises, but that a few days before its delivery, he went upon the premises and through the house and yard in company with his grantor who then pointed out to him a fence as a boundary. This was admitted, not as evidence of boundary, but as evidence of seisin of the defendant's grantor. *Held,* that the evidence was competent to prove seisin, the pointing out of the fence as the boundary being part of the *res gestæ.*

When a transaction is competent in evidence, declarations which are part of and characterize it are competent for the same purpose for which the transaction itself is competent.

TORT for breaking and entering the plaintiff's close.    Writ dated May 23, 1898.

At the trial in the Superior Court, before *Stevens,* J., without a jury, it appeared that the issue was as to the true boundary line between the adjoining lots of the plaintiff and the defendant on Jewett Street in Lowell. The tract in dispute contained about three hundred and thirty-seven square feet, and was a long wedge-shaped piece of land, nine feet across at the westerly end and coming to a point at the easterly end. The plaintiff alleged the true boundary to be the southerly line of the wedge running westerly and the defendant alleged it to be the northerly line running westerly after they diverged from a point in the westerly line of Jewett Street, which was conceded by both parties to be the true point of division between them on Jewett Street. On the line as claimed by the defendant there stood at the time of the trial the fence hereafter referred to.

The lots of the plaintiff and defendant were formerly parts of a lot of land owned by one Varnum under whom both the

plaintiff and defendant claimed. On May 7, 1878, Varnum conveyed the plaintiff's. lot to one Mrs. Hargrave, who owned and occupied it until September 17, 1891, when she conveyed it to the plaintiff. The defendant took his deed from Varnum May 10, 1878, three days later than the plaintiff's grantor.

The description in the deed from Varnum to Hargrave was as follows: " A certain parcel of land with the buildings thereon situated on the westerly side of Jewett Street in said Lowell, being bounded as follows, to wit: beginning at the northeasterly corner of the premises on Jewett Street, thence running southerly along said Jewett Street thirty-six feet and six inches to land of my own ; thence westerly along land of my own about seventy-five feet to land of McNabb ; thence northerly along said McNabb's about thirty-two feet to Durant's land ; thence easterly along Durant's land about eighty-three feet to the point of beginning."

The description in the deed from Hargrave to the plaintiff was in substance the same, including the words: " thence northerly along said McNabb land about thirty-two feet to land now or formerly of Durant " ; describing the westerly line of the lot.

It appeared, from the plan used at the trial and other evidence, that if the westerly line of the plaintiff's lot was made thirty-two feet, it would begin nine feet on the defendant's side of the fence mentioned above and would establish the plaintiff's claim to the disputed wedge-shaped portion of the lot.

The plaintiff introduced evidence tending to show that shortly after his purchase in 1891, he notified the defendant that he claimed title to the tract of land in dispute, and in April, 1898, entered upon it and moved the fence then standing on the line as claimed by the defendant to the line as claimed by the plaintiff. In the following May the defendant forcibly entered upon the tract, took down the fence and replaced it on the old line, as it stood before it was moved by the plaintiff.

The defendant testified that at the time of the conveyance to him a fence stood on the old line running westerly from Jewett Street, the entire length of the lot, that he and Mrs. Hargrave had always treated this fence as the division line between the two lots, that both had repaired it at different times, and that

he and Mrs. Hargrave had filled in their respective lots up to the line of the fence and had raised the fence but had not changed the location. The plaintiff objected to the admission of this evidence for the purpose of showing the construction put by the defendant and plaintiff's grantor upon the deeds, and requested that, if admitted, it should be considered only on the question of adverse use. The judge refused to rule as requested, and admitted the evidence to show the construction placed upon the deeds by the defendant and the plaintiff's grantor. To this admission and the refusal the plaintiff excepted.

The defendant also testified that his deed from Varnum was delivered to him on May 10, 1878, elsewhere than on the premises, but that a few days before its delivery, in company with Varnum, he went upon the premises, and through the house and yard, and that Varnum then pointed out to him the fence as the boundary. He moved into the house the day after the delivery of the deed. The plaintiff objected to this evidence, and on its admission excepted.

Mrs. Hargrave, the plaintiff's grantor, was called as a witness by the defendant, and among other things testified that she moved into the house two or three days before her deed was delivered to her; that the fence then was on the old line, and had remained there up to the time she sold to the plaintiff; that her deed was delivered on the premises; that she had always treated the fence as the division line between her land and the land of the defendant; that she had repaired it at various times; that she had filled in her land up to the fence at the time the defendant filled in his, and that the defendant with her consent had raised the fence at that time, but had not changed the location. The plaintiff objected to the admission of this evidence for the purpose of showing the construction put by the witness and the defendant upon the deeds of Varnum to Hargrave and Varnum to the defendant, and requested that, if admitted, it should be considered only on the question of adverse use. The judge refused to rule as requested, and admitted the evidence to show the construction placed upon the deeds by the defendant and the plaintiff's grantor. To this admission and refusal to rule the plaintiff excepted. There was no other evi-

dence bearing upon the position of the fence, or material to the issue involved.

At the close of the evidence, the plaintiff asked for five rulings, two of which the judge gave, and refused to give the following : 1. That on all the evidence in this case the plaintiff's lot is bounded on the south by the new line claimed by the plaintiff. 3. That the language of the deeds of Varnum to Hargrave and Hargrave to the plaintiff is not of doubtful construction or ambiguous, and the acts of the parties at the time of conveyance and subsequently are not admissible to show in- tention. 5. The language in the deed from Varnum to Hargrave which defines the westerly line of the Hargrave, or plaintiff's lot, at " about thirty-two " feet established that line as thirty-two feet from Durant's land, unless from other portions of the deed it is clear that it was the intention to carry that line only as far as the old fence, and that no such intention can be gathered from the deed.

The rulings requested by the plaintiff which were given by the judge were as follows : 2. That no such use of the land in dispute is shown by the defendant as to warrant a finding that he had acquired title to the same by adverse possession. 4. That parol evidence of the acts and declarations of the defendant's grantor made to him at the time of transfer is inadmissible and cannot aid the court in fixing the disputed line.

The judge found for the defendant ; and the plaintiff alleged exceptions.

*J. J. Hogan & W. A. Hogan*, for the plaintiff.

*N. D. Pratt*, for the defendant.

BARKER, J.   The decision of two questions will dispose of this bill of exceptions.   One is whether extrinsic evidence was admissible to aid the court in construing the deed of May 7, 1878.   The plaintiff contends that the deed is unambiguous and that it establishes his southwest corner at the southwest corner of the disputed land thirty-two feet from Durant's land.   But the language is " about thirty-two feet," and suggests that " there is some monument, abuttal or line there," which extrinsic evidence is admissible to fix.   *Blaney* v. *Rice*, 20 Pick. 62, 64.   To do this, evidence of the practical construction put upon the deed by the parties whose rights it governed was competent.

*Reynolds* v. *Boston Rubber Co.* 160 Mass. 240, 245, and cases cited.   *Whittenton Manuf. Co.* v. *Staples*, 164 Mass. 319, 321. *Menage* v. *Rosenthal*, 175 Mass. 358, 361.

The other question is whether the testimony of the defendant was admissible that his deed was delivered to him elsewhere than on the premises, but that a few days before its delivery he went upon the premises and through the house and yard in company with his grantor who then pointed out to him the fence as the boundary.

The plaintiff is right in contending that this declaration, it not being shown at the trial that the grantor was not then living, was incompetent to prove that the fence was the boundary. *Flagg* v. *Mason*, 8 Gray, 556, 557.   *Long* v. *Colton*, 116 Mass. 414, 415.   *Adams* v. *Swansea*, 116 Mass. 591, 596.   *Peck* v. *Clark*, 142 Mass. 436, 440.   But there was a purpose for which the evidence was admissible.   It was necessary for the defendant to prove seisin in his grantor.   The pointing out of the fence as the boundary was part of a *res gesta* competent to show that seisin.   When a transaction is competent declarations which are a part of and which characterize it are competent as part of the transaction for the same purpose for which it is competent. That the evidence was taken only upon the question of seisin is shown by the ruling "That parol evidence of the acts and declarations of the defendant's grantor made to him at the time of transfer is inadmissible and cannot aid the court in fixing the disputed line."

*Exceptions overruled.*