### LEON LANGDEAU *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Hampden.     September 25, 1906. — February 25, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, &
SHELDON, JJ.

*Insurance,* Life.  *Evidence.*

In an action on a policy of life insurance, where the defence was that certain rep-
resentations made by the insured in his application for insurance were false and
either were made fraudulently or were material to the risk and avoided the
policy, the policy stated that it was issued "in consideration of the statements
and agreements in the application herefor, which are hereby referred to, and as
warranties made a part of this contract, and of the premium" named.  The
presiding judge under R. L. c. 118, § 73, admitted in evidence an application for
insurance by the insured, containing the representations in question, of which a
copy was attached to the policy, although a so called proposal for insurance
upon the other side of the same paper was not included in the copy attached to
the policy and was excluded by the judge.  The portion of the contents of the
paper of which the copy was annexed included the questions and answers at-
tested by the medical examiner and the statement signed by the applicant that
these questions and answers should form the basis and become a part of the con-
tract of insurance, and all the material portions under the designation "pro-
posal for insurance" on the other side of the paper were incorporated by
repetition in the part called the "application," of which the copy was annexed,

except that the name of the beneficiary, a brother of the insured, appeared only in the "proposal for insurance." The terms of the policy and of the application gave the insured the right to change the beneficiary from time to time by a notice in writing subject to the approval of the company. *Held,* that, as the omission of the name of the beneficiary in no way affected the right of the company to avoid the contract, the ruling of the judge admitting the application *in evidence as part of the contract was correct.*

In an action on a policy of life insurance by an assignee from the beneficiary named in the policy, if the contract of insurance was obtained by misrepresentations of the insured made with actual intent to deceive or if a matter misrepresented by him increased the risk, the plaintiff under R..L. c. 118, § 21, cannot recover on the policy.

In an action on a policy of life insurance dated in December, 1904, where it appeared that in the application of which a copy was attached to the policy the insured had answered in the negative the questions whether he used ardent spirits, wine or malt liquors, and whether he ever had used them to excess, the defendant, without objection from the plaintiff, introduced in evidence a record of a court in a city in another State showing that in 1898 the insured had pleaded guilty to a charge of drunkenness, had been found guilty and·had paid the fine imposed, followed by testimony of numerous witnesses tending to prove habits of intoxication on the part of the insured and his use of intoxicating liquor to excess. Against the exception of the plaintiff the presiding judge admitted in evidence the record of the conviction of the insured in the police court of Chicopee in September, 1903, showing that he pleaded guilty to the crime of drunkenness and was fined $5, which he paid, and·also admitted, subject to the plaintiff's exception, in answer to a question in regard to the use of intoxicating liquors by the assured the answer "He was a man, at that time, who was frequently under the influence of liquor on the street, especially Saturday afternoons and through Sundays. That would be his time of leisure." *Held,* that the evidence was admitted properly upon the issues of the falsity of the representations made by the insured and his knowledge that they were false.

In an action on a policy of life insurance where it appeared that in the application of which a copy was attached to the policy the insured represented that he never had been rejected for life insurance by the defendant or any other company, there was uncontroverted evidence that less than a month before his application to the defendant the insured had applied to another company for insurance and had been rejected, but there was no direct evidence that he had been informed of the rejection. *Held,* that it was a question for the jury whether under the circumstances disclosed by the evidence the insured should have drawn the inference that his proposal had been rejected.

In an action on a policy of life insurance it appeared that in the application of which a copy was attached to the policy the insured represented that he never had been rejected for life insurance by the defendant or any other company. The question in the application read, "Have you ever been rejected or postponed by this or any other company or society?" The plaintiff asked for an instruction that this question "should be construed as referring to rejection or postponement for insurance of the same class and kind as that applied for in said application." The presiding judge refused to give this instruction. *Held,* that the refusal was right, as the inquiry was not limited to any particular kind of contract, but was intended to elicit information upon the question whether insurance in any form had been refused upon the application of the insured.

CONTRACT upon two policies of insurance for $250 each issued upon the same application on the life of Arthur Paquette and made payable to one Romeo Paquette, which after the death of the insured were assigned to the plaintiff, Leon Langdeau. Writ dated June 19, 1905.

In the Superior Court the case was tried before *Crosby*, J. At the trial, the plaintiff put in evidence the policies of insurance, the proof of the death of the insured, proof of payment of all premiums due up to the date of the death of the insured, proof that Romeo Paquette was the beneficiary under the terms of the policies and that Romeo Paquette made an assignment of his right, title and interest under the policies to the plaintiff, after the death of the insured. This evidence was not controverted by the defendant.

The policies in question were issued upon the basis of certain statements and representations made by the insured in his application in answer to questions asked therein. Among others, there were the following questions and answers: " No. 12. Q. Do you use ardent spirits, wine or malt liquors ? If so, average quantity each day ? A. No." — " No. 13. Q. Have you ever used them to excess ? A. No."

The plaintiff requested the defendant to produce the original application upon which the policies were issued on the life of Arthur Paquette and also the paper or writing in which the name of the person named as beneficiary under the above mentioned policies was set forth. In response to this request the defendant produced in court at the trial a paper which was marked Exhibit J, and was put in evidence by the plaintiff. It was admitted that this paper was signed by the insured on both sides. It did not appear from the evidence that the insured signed and delivered any other paper before the policy in question was delivered. The paper marked Exhibit J was dated December 4, 1904. The policies were dated December 14, 1904.

The policy contained the following provisions :

" In consideration of the statements and agreements in the application herefor, which are hereby referred to, and as warranties made a part of this contract, and of the premium of 19 cents to be paid at or before noon on Wednesday of each week

during the lifetime of Arthur Paquette the insured hereunder, agrees to pay the sum of Two Hundred and Fifty Dollars, subject to the following conditions and provisions and those recited on the back hereof, which are made a part of this contract.

"In the event of the decease of the insured while this Policy is in force, payment of the amount due hereunder will be made within twenty-four hours after satisfactory proof of death, to the beneficiary, if living, last nominated, whether in the proposal herefor or in any written amendment thereof filed with and approved by the Company; but the Company may make payment to the Executor or Administrator of said insured, or to any relative by blood or connection by marriage, or to any other person in the judgment of said Company equitably entitled to the same by reason of having incurred expense in any way on behalf of the insured for burial, or for any other purpose; and the receipt of any such person shall be conclusive evidence that payment has been properly made, and shall discharge the Company from liability under this Policy."

The copy of the application for insurance, which was the portion of Exhibit J printed on the back of the policy, after stating the questions and answers, terminated as follows:

"I declare and warrant that the representations and answers made herein are complete, strictly correct and true; that the several questions were duly asked and that the answers given by me are truly recorded as above; that they shall form the basis and become part of the contract of insurance; that any false or untrue answer shall render the Policy null and void; and that said Policy shall not be binding upon the Company unless at noon upon its date I shall be alive and in good and sound health; hereby accepting, for any person who shall have interest in said Policy, the Company's determination and apportionment of dividends and method of distribution thereof. The right is reserved to the insured to change the beneficiary from time to time by written notice to and subject to the approval of the Company, but payment upon presentation of the Policy and the Premium Receipt Book shall be in full satisfaction of claim.

"Arthur Paquette, Applicant."

" I hereby certify that the foregoing questions were asked by me and the answers given as recorded, and that I witnessed the applicant's signature, on Dec. 4, 1904.

" J. G. Beauchamp, M. D."

The defendant offered evidence to show that the answers of the insured to Questions Nos. 12 and 13, in that portion of Exhibit J which followed " Application for Insurance in the John Hancock Mutual Life Insurance Company," were false and made with actual intent to deceive the defendant, or that the matters misrepresented increased the risk of loss. The following question was asked on cross-examination of one of the plaintiff's witnesses : " Q. He was the same Arthur Paquette who was arrested and fined for drunkenness in the Chicopee Police Court, wasn't he?" The plaintiff objected to the evidence on the ground that the defendant had not complied with R. L. c. 118, § 73, in that it had failed to attach a correct copy of the application to the policies issued to the insured. The plaintiff asked the judge to rule that the whole of Exhibit J constituted the application for the policies. The judge refused so to rule, and ruled that the portion of Exhibit J which constituted the application was that portion thereof contained on its second page which followed the words : " Application for Insurance in the John Hancock Mutual Life Insurance Company " down to and including the words " Arthur Paquette, Applicant." It was not disputed that a correct copy of the portion of Exhibit J admitted by the judge was attached to each of the policies in suit. To this ruling and refusal to rule the plaintiff excepted. The judge further stated " That question may be answered for the purpose only of identifying this insured as the same person whose name appears in some record, with the understanding that the record shall be produced." Then ensued the following : " Q. Will you answer that question ? A. I would not say he was drunk. — Q. I didn't ask you that. A. I know he got arrested. I could not tell what he was arrested for."

The defendant subsequently introduced as a witness the clerk of the Police Court of Chicopee and offered in evidence a record of the conviction of Arthur Paquette before the Police Court of Chicopee on September 5, 1903, showing that he pleaded guilty to the crime of drunkenness and was fined $5, which he paid.

This record was admitted by the judge against the exception of the plaintiff.

The defendant introduced as a witness one Mathews, who was asked: "Will you state what you know about Mr. Paquette's habits with reference to the use of intoxicating liquors?" He answered, subject to the plaintiff's exception, "He was a man, at that time, who was frequently under the influence of liquor on the street, especially Saturday afternoons and through Sundays. That would be his time of leisure."

A record of the city court of Norwich, Connecticut, was introduced by the defendant, without objection by the plaintiff, to the effect that Arthur Paquette was presented before that court on August 12, 1898, complained of for intoxication, pleaded guilty, was found guilty and was ordered to pay a fine of $3 and costs, which he paid. This was followed by the evidence of numerous witnesses introduced by the defendant, without objection by the plaintiff, whose testimony tended to prove habits of intoxication on the part of the insured, and who testified to various instances of his use of intoxicating liquor to excess.

The defendant offered in evidence a deposition of one Littlejohn to prove that the insured had been rejected by another insurance company previous to his application for insurance in the defendant company, in contravention of his stipulation or representation as contained in the question numbered 17 of the alleged copy of the application attached to the policies. The plaintiff objected upon the ground above set forth that a correct copy of the application was not attached to the policies. The judge admitted the evidence and the plaintiff excepted. The evidence did not show that the insured had any written or oral notice of such rejection.

The evidence offered in this deposition was substantially as follows: That Edward Littlejohn was an officer in the employ of the Prudential Insurance Company of America on November 9, 1904; that his duties included the rejection of applications for insurance in that company; that on or before November 9, 1904, an application for additional insurance was made to that company by Arthur Paquette, who at that time was the insured named in two policies previously issued by that company; that this application came before Littlejohn for his rejection or ap-

proval ; that he was the officer properly authorized to make such rejection and his decision was final.   He then was asked by Interrogatory 17, " If so, what action on it did you take and when did you take that action?"   Answer to Interrogatory 17, " I declined his said application on the 9th day of November, 1904."

The insurance issued on the life of Arthur Paquette by the defendant company was special weekly premium insurance of the class known as industrial insurance.

The plaintiff asked the judge to make, among others, the following rulings:

Number 7.  The defendant must prove that the insured had knowledge of his rejection for insurance on his life at the time of making the statements contained in the application for insurance in the John Hancock Mutual Life Insurance Company.

Number 8.  The question in the application for insurance in the John Hancock Mutual Life Insurance Company, " Have you ever been rejected or postponed by this or any other company or society ?" should be construed as referring to rejection or postponement for insurance of the same class and kind as that applied for in said application.

The judge refused to make these rulings and the plaintiff excepted.

The judge made the following ruling at the request of the defendant:

" Number 14.  The insured represented in his application to the defendant that he had never been rejected or postponed by that or any other company.  The evidence that he had been rejected by the Prudential Company is not controverted by the plaintiff.  If you find that this false representation or statement was made with actual intent to deceive the defendant the policies issued on his life were thereby rendered void and the defendant is entitled to a verdict in its favor."   To this ruling the plaintiff excepted.

The judge instructed the jury upon the subject as follows:

" Now, gentlemen, there is another question which comes up in this case with reference to the Hancock Company, and that is that these policies are void, by reason of the statement made by this deceased that he had not been rejected for insurance by any

other company, and the question was, 'Have you ever been rejected or passed upon by this or any other company, etc.,' and the answer was 'No.' The evidence shows that he did make a second application in the Prudential Insurance Company on November 9th, 1904, and that that application was rejected. There is not any evidence in this case that I now recall, any direct evidence in the case, that he knew the application was rejected, but it is for you to say, gentlemen, whether or not he did know or whether he had a right to believe and whether it was his duty to believe that in view of all the circumstances he had been rejected, but in considering that question you will determine the date, the time when he made his application for insurance in the Prudential Company, the second application, which was rejected. That application was made on the 9th of November, and the application in the Hancock Company was made on the 4th day of December, a period of about three or four weeks, and I instruct you with reference to that that if he made that answer which he did make with the actual intent to deceive the John Hancock Insurance Company, or if the making of the answer which he did make, the false answer, actually did increase the risk of loss, then the plaintiff is not entitled to recover against the Hancock Insurance Company. The question is, when this answer was made had this deceased such opportunity for knowing that he ought to have understood that he had made an application and that it was rejected or that he believed it to be rejected. The statement which was made was a false statement. There is no doubt about that, because the undisputed evidence shows that before this application was made that application had been actually rejected. Now, was his statement made with the actual intent to deceive the Hancock Insurance Company, or, if it was not made to deceive the Hancock Insurance Company, did it, as a matter of fact, actually increase the risk of loss? If that is so, then the plaintiff is not entitled to recover against the Hancock Company, and, gentlemen, as bearing upon that, you take all the evidence and all the facts and circumstances in the case and weigh them carefully and determine whether or not either one of those things occurred. If they did, the plaintiff is not entitled to recover. If they did not occur, if it did not increase the risk of loss and was not made with intent

to deceive, then that would eliminate one of the grounds of defence in this case."

In answer to a question specially submitted to them by the judge, the jury found that at the date when the insured made the application to the defendant for insurance he was not addicted to the excessive use of intoxicating liquor, but that before that date he had used ardent spirits, wine or malt liquors to excess. The jury returned a general verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in September, 1906, before *Knowlton*, C. J., *Morton, Hammond*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices except *Rugg*, J.

*J. F. Malley*, for the plaintiff.

*E. W. Beattie, Jr.*, (*D. E. Leary* with him,) for the defendant.

BRALEY, J.   The answer among other defences specifically alleged that under the application the representations of the insured that he never used intoxicating liquors, or, if so, that he never had used them to excess, and that he had not been rejected or "postponed" by any other insurance company, or society, were false, and being either fraudulently made, or material to the risk, avoided the policy.   R. L. c. 173, § 27.   *Kidder* v. *Order of the Golden Cross*, 192 Mass. 326.   The admissibility of these representations depends upon the correctness of the ruling, that the proposal for insurance formed no part of the application, a copy of which under R. L. c. 118, § 73, unless attached to the policy cannot be considered as forming a part of the policy or introduced in evidence.   *Considine* v. *Metropolitan Ins. Co.* 165 Mass. 462.   *Johnson* v. *Mutual Ins. Co. of New York*, 180 Mass. 407, 408.   This requirement was not a rule either of construction or of evidence at common law, but " the object of the statute is to prevent companies from holding insured persons bound by a contract in writing of which they have no copy."   *Holden* v. *Prudential Ins. Co.* 191 Mass. 153, 157.   In the policy furnished, which purported to have attached a correct copy of the application, the proposal was wholly omitted, and only the questions and answers attested by the medical examiner, and the statement signed by the applicant that these questions and answers should form the basis and become a part of the contract of insurance were annexed.   While an oral contract for insurance is valid, it is uni-

versally customary to embody the terms of the contract in the
policy, which usually does not recite the conditions upon which
it is issued, but incorporates them by a general reference to a
separate paper, usually termed either the declarations or pro-
posal or application of the party desiring insurance.   *Holmes*
v. *Charlestown Mutual Ins. Co.* 10 Met. 211, 214.   When com-
pleted such negotiations are supposed to include all the essential
terms of the proposed contract, of which they form a part,
*Scammell* v. *China Mutual Ins. Co.* 164 Mass. 341, 342, and,
although the general designation by which they are incorpo-
rated may vary according to the practice adopted by different
companies, yet to ascertain the material provisions of the con-
tract the inquiry is the same, namely: What did the insured
offer to which reference is made, and how far has this offer been
accepted by the company?   *Daniels* v. *Hudson River Ins. Co.*
12 Cush. 423.   *Miles* v. *Connecticut Mutual Ins. Co.* 3 Gray,
580.   *Harris* v. *North American Ins. Co.* 190 Mass. 361.

Omitting all reference to memoranda which neither party
contends to be material, these preliminary negotiations are found
on the first and second pages of a paper referred to in the excep-
tions as exhibit " J."   The first page purports to be a proposal
for insurance "on the whole life plan" at a special weekly pre-
mium, signed by the insured, who is referred to under his sig-
nature as "the person to be insured," while the second page,
signed by him as the "Applicant" is designated as an "Appli-
cation for Insurance."   In the policy this language is found: " in
consideration of the statements, and the application herefor
which are hereby referred to, and as warranties made a part of
this contract, and of the premium . . . to be paid" upon the
death of the insured if the policy is in force the company agrees
to pay the amount of insurance to the beneficiary, if living, last
nominated "whether in the proposal herefor, or in any written
amendment thereto filed with, or approved by the company."
It is manifest from a comparison of the contents of this paper,
exclusive of the medical examination, that all the material por-
tions designated as the proposal were by repetition incorporated
in the part called the "application" which was made the basis
of the contract, even if the name of the beneficiary appeared
only in the proposal.   When the insured received the policy

with a copy of this application annexed he was put in possession of the entire contract with this exception, but as the exception in no wise affected any essential element of the contract upon which the right of the company to avoid it depended, and of which the insured was entitled to a copy, the statute was satisfied, and the ruling admitting the application in evidence as a part of the contract was correct.

Until the death of the insured his designation of a beneficiary, being subject to change with the consent of the insurer, was ambulatory and constituted a mere expectancy, but, there having been no appointment subsequent to the proposal, upon the happening of this event the interest of the plaintiff's assignor, who had been designated, became vested, and by assignment passed to the plaintiff. *Tepper* v. *Royal Arcanum*, 14 Dick. 321. *Spengler* v. *Spengler*, 20 Dick. 176. *Hopkins* v. *Hopkins*, 92 Ky. 324. *Union Mutual Association* v. *Montgomery*, 70 Mich. 587. *Life Association* v. *Winn*, 96 Tenn. 224. *Martin* v. *Stubbings*, 126 Ill. 387. Compare *Rawson* v. *Milwaukee Mutual Ins. Co.* 115 Wis. 641, 647. See also *Pingrey* v. *National Ins. Co.* 144 Mass. 374, 382; *Central Bank of Washington* v. *Hume*, 128 U. S. 195.

By reason of privity of title, if the insurance had been payable to the insured, upon suit by his administrator or executor the record evidence of his plea of guilty to the charge of drunkenness, made before the application was presented to the company, would have been competent. *Noyes* v. *Morrill*, 108 Mass. 396. *Stockwell* v. *Blamey*, 129 Mass. 312. *Fellows* v. *Smith*, 130 Mass. 378. But, while the plaintiff claims under the beneficiary, his right to recover like that of his assignor is derived from the insured, and rests upon the validity of the contract. R. L. c. 173, § 4. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461. *Life Association* v. *Winn, ubi supra*. *Smith* v. *National Benefit Society*, 123 N. Y. 85. *Van Frank* v. *United States Masonic Benevolent Association*, 158 Ill. 560. *Connecticut Ins. Co.* v. *Hillmon*, 188 U. S. 208. This contract was voidable by the company if fraudulently obtained either by misrepresentations made with actual intent to deceive, or if the matter misrepresented increased the risk. R. L. c. 118, § 21. *Ring* v. *Phœnix Assurance Co.* 145 Mass. 426. *Durkee* v. *India Mutual Ins. Co.* 159 Mass. 514.

If the insured used ardent spirits to excess his habits of inebriety were material upon whether he was an insurable risk. *Rainger* v. *Boston Mutual Life Association*, 167 Mass. 109. In support of its contention that the negative answers to the questions concerning this habit were false, without objection the defendant introduced the evidence of many witnesses, and a previous plea of guilty to a similar charge, which tended to prove that for a long time previous to the application the insured was addicted to habits of intoxication. It further appears that, as the evidence to which the exception was taken was within this period, it is not open to the objection of being so remote as to have no evidentiary value. The issue was the falsity of the representations, and this fact could be established only upon proof of habits of drunkenness shown by his conduct, of which he must be presumed to have had knowledge and to which if living he could have testified. *Dolan* v. *Mutual Reserve Fund Association*, 173 Mass. 197, 201. *O'Connell* v. *Cox*, 179 Mass. 250, 254. *Swift* v. *Massachusetts Mutual Ins. Co.* 63 N. Y. 186, 191. *Smith* v. *National Benefit Society, ubi supra.* *Welch* v. *Union Central Ins. Co.* 108 Iowa, 224. *Sutcliffe* v. *Iowa State Traveling Men's Association*, 119 Iowa, 220. *Life Association* v. *Winn, ubi supra.* *Connecticut Ins. Co.* v. *Hillmon, ubi supra.* *Kelsey* v. *Universal Ins. Co.* 35 Conn. 225. *Asbury Ins. Co.* v. *Warren*, 66 Maine, 523. R. L. c. 175, § 66.

If the unqualified answer to the seventeenth question as to previous insurance was untrue, and made with actual intent to deceive, the misrepresentation avoided the policy, and this question ordinarily is one of fact for the jury to determine under suitable instructions. *Coughlin* v. *Metropolitan Ins. Co.* 189 Mass. 538, 539, and cases cited. *Mutual Benefit Ins. Co.* v. *Wise*, 34 Md. 582. *Towne* v. *Towne*, 191 Ill. 478. While the evidence was uncontroverted that a short time before the policy in suit was issued the insured had made application to another company for insurance and had been rejected, there was no direct proof that he had been informed of the rejection, but, the representation being false, it was for the jury to say under all the circumstances disclosed by the evidence whether as a man of average capacity in the ordinary course of human affairs the insured should have understood that his proposal had been unfavorably

acted on and should have drawn the inference that it had been rejected. *American Union Ins. Co.* v. *Judge*, 191 Penn. St. 484. In the instructions given, which adopted not only the fourteenth request of the defendant but the seventh request of the plaintiff, the jury were instructed correctly that unless they found constructive notice by which the insured was chargeable with such knowledge, this ground of defence could not prevail.

The plaintiff's eighth request was refused properly, as the inquiry was not limited to any particular kind of contract, but was intended to elicit information whether upon his application insurance in any form had been refused.

An exception to the further instruction that if the risk of loss was thereby increased the plaintiff could not recover, has not been argued, and must be treated as waived.

*Exceptions overruled.*