## BRIDGET L. WHITE *vs.* PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY OF NEW YORK.

Essex.   November 8, 1894. — February 28, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Life Insurance — Warranty in Application for Policy — " Misrepresentation "
— Statute — " Attended " by Physician.*

An application for a policy of life insurance stated that it was " declared and warranted that all the statements and representations contained in " the same were " material " and " true," and, " with the stipulated premiums," should " be the sole basis of the contract . . . if a policy be issued . . . thereon, and that if any concealment, or fraudulent or untrue statement or representation be made," the policy should be void. The application contained certain questions and answers, at the end of which, and above the applicant's signature, was the following: " I hereby warrant said answers to be true." The policy recited that, " in consideration of the stipulations and agreements in the application herefor and upon the next page of this policy, all of which are a part of this contract," and in consideration of the payment of the premium thereon, the company promised to pay to the beneficiary a certain sum upon satisfactory proofs of the death of the assured. *Held,* in an action upon the policy, that St. 1887, c. 214, § 21, relating

to the effect of a "misrepresentation" made in the negotiation of a policy of insurance, applied to the policy in suit.

If a person goes to the office of a physician and tells him that he has coughed and spit blood, and desires him to make a physical examination, to which he submits, receiving a prescription and paying for the physician's services, and subsequently calls again at the latter's office, consulting him professionally and paying him a fee, such person is "attended" by a physician, within the meaning of the question in an application for a policy of life insurance, "When and by what physician were you last attended, and for what complaint?"

CONTRACT, upon a policy of insurance for $2,000, issued by the defendant on September 28, 1891, on the life of John T. White, and payable to the plaintiff, who was his mother. Trial in the Superior Court, before *Sherman, J.*, who reported the case for the determination of this court, in substance as follows.

John T. White died on February 26, 1892. The application for insurance was signed by the assured on September 28, 1891, and contained the following statements: "I hereby apply to the " defendant " for a policy of insurance to be issued in accordance with the directions hereof. It is hereby jointly agreed by myself and all parties in interest, or who shall become interested, as follows: . . . It is hereby further declared and warranted that all the statements and representations contained in Part 1 and Part 2 of this application, . . . by whomsoever they be written, are material and are true, and, with the stipulated premiums, shall be the sole basis of the contract with the " defendant, " if a policy be issued or renewed thereon, and that if any concealment, or fraudulent or untrue statement or representation be made, or if at any time any covenant or agreement herein made shall be violated, said policy and insurance shall be null and void."

In Part 2 of the application were the following printed questions and answers, written by the person who acted as medical examiner:

" 2. Are you now in good health? Yes."

" 5. Have you ever had habitual cough, raising or coughing of blood, difficult or short breathing, habitual expectoration, pain in chest, or any pulmonary symptom? No."

" 12. Disease of lungs? No."

" 15. Have you now, or have you ever had, any of the following? Answer yes or no as to each. If ' Yes ' in any case, give particulars under 18 below."

"17. Have any of your blood relatives ever committed or attempted suicide, or been afflicted with or died of consumption, insanity, cancer, or any hereditary disease? (Answer fully.) No."

"20. When and by what physician were you last attended, and for what complaint? (Answer fully and specifically.) Not since childhood."

At the end of the application, and just above the applicant's signature thereon, was the following clause: "I hereby further declare that I have read and understand all the above questions put to me by the medical examiner, and the answers thereto, and I hereby warrant said answers to be true."

Upon the same piece of paper on which the policy was printed a copy of the application, having the answers and signatures thereon, was printed and written. The policy provided that the defendant, "in consideration of the stipulations and agreements in the application herefor and upon the next page of this policy, all of which are a part of this contract," and in consideration of the payment of the premium thereon, promised to pay to the plaintiff the sum of $2,000 upon satisfactory proofs of the death of the assured.

The defendant introduced evidence tending to show that the answers to the questions in the application above stated were not true; and there was evidence introduced by the plaintiff that the answers were true.

The only respect in which the defendant contended that the answer to the question, "Are you now in good health?" was untrue, was that the plaintiff then had disease of the lungs; and the evidence upon this point related only to that disease. The evidence as to the untruth of the answer to question 17 related to the death of a brother of the assured.

The defendant's contention that the answer to question 20 was untrue was based solely upon the evidence of a physician, who testified, in substance, that some time between March and September, 1888, the assured came to his office and told him he had coughed and spit some blood, and desired him to make an examination; that he did so by questioning the assured, and by an examination of his chest by percussion and with a stethoscope; that, in his opinion, the insured had incipient

phthisis, but that he did not inform the assured of his opinion; that he prescribed some medicine for the cough, and a tonic; that the assured called again in a week's time, and the cough appeared much improved; and that the assured paid for these services.

The judge instructed the jury upon this point as follows: "If John T. White went to Dr. Sanborn's office, told him that he had coughed and spit blood, and desired Dr. Sanborn to make an examination, and submitted to a physical examination aided by the use of the stethoscope, received a prescription, and paid Dr. Sanborn for his services, and subsequently called at Dr. Sanborn's office, consulted him professionally, and paid him a fee, then John T. White was attended by a physician within the meaning of question 20 "; and the plaintiff excepted.

The plaintiff requested the judge to rule that the answers to the questions in the application were representations, and not warranties; but he declined so to rule, and instructed the jury that they were warranties.

The plaintiff also requested the judge to rule that St. 1887, c. 214, § 21, applied to the case; but he declined so to rule.

The plaintiff excepted to the above ruling and refusal to rule; and the jury returned a verdict for the defendant. Such order was to be made as justice might require.

The case was argued at the bar in November, 1894, and afterwards was submitted on the briefs to all the judges.

*J. F. Quinn,* (*H. P. Moulton* with him,) for the plaintiff.

*W. H. Moody,* (*J. H. Pearl* with him,) for the defendant.

BARKER, J. The most important question raised by the report is as to the effect of St. 1887, c. 214, § 21, now by the Massachusetts insurance act of 1894 re-enacted as St. 1894, c. 522, § 21. The question is, in substance, whether the provisions of that section include in the word "misrepresentation" statements which in insurance law are classed as warranties because expressly said to be warranties by the language of the parties, or whether the section deals only with statements which are representations, and not with technical warranties. The ruling given was upon the theory that the section did not affect statements which were said in the policy and the application to be warranties, but only misrepresentations as to

matters which were the subject of representations, as distinguished from warranties.

The section as it stood in St. 1887, c. 214, § 21, was in these words: " No oral or written misrepresentation made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss"; and the language of St. 1894, c. 522, § 21, is the same. This language is broader than that of Pub. Sts. c. 119, § 181, which applied only to misrepresentations made in obtaining or securing policies of fire insurance and of life insurance, and which was in these words: " No oral or written misrepresentation made in obtaining or securing a policy of fire or life insurance shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increases the risk of loss."

The broader language of the section, as it is found in the general insurance act of 1887, was clearly designed to extend the rule, which up to that time dealt only with misrepresentations affecting policies of fire insurance and of life insurance, and to apply it to misrepresentations made in the negotiation of any contract or policy of insurance of whatever kind. Section 181 of Pub. Sts. c. 119, is merely a re-enactment identical in language with St. 1878, c. 157, § 1, which as to life insurance was a wholly new provision. There was, however, a previously enacted statute concerning the form of fire insurance policies, providing that the conditions of the insurance should be stated in the body of the policy, and that neither the application of the insured nor the by-laws of the company should be considered as a warranty or a part of the contract except so far as incorporated in full into the policy and appearing on its face before the signatures of the officers of the company. This was St. 1864, c. 196, which took the place of and repealed St. 1861, c. 152, which seems to have been the earliest statute dealing with the form of fire insurance policies, and which provided that in all insurance against loss by fire the conditions of the insurance should be stated in the body of the policy, and that neither the application nor the

by-laws, as such, should be considered as a warranty, or part of the contract. The provisions of Pub. Sts. c. 119, § 181, were substantially re-enacted in the general insurance act of 1887, and in that of 1894. See St. 1887, c. 214, § 59 ; St. 1894, c. 522, § 59. Besides the statutes already noted there are also the several enactments, beginning in the year 1873, establishing a standard form for policies of fire insurance. These are St. 1873, c. 331, with the amendatory act St. 1880, c. 175 ; St. 1881, c. 166, repealing the two acts last cited and prescribing a new standard form of policy ; and Pub. Sts. c. 119, § 139, St. 1887, c. 214, § 60, and St. 1894, c. 522, § 60, the last three being substantially re-enactments continuing in force the provisions of St. 1881, c. 166. In the standard form of policy given in St. 1873, c. 331, § 1, is this clause : " This policy shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured," and the same clause is in the standard form given in St. 1881, c. 166, § 1, and in Pub. Sts. c. 119, § 139, in St. 1887, c. 214, § 60, and in St. 1894, c. 522, § 60.

The provisions of St. 1887, c. 214, § 21, are thus seen to be part of a system of legislation, beginning in the year 1861, and then applied only to fire insurance, in which the Legislature has dealt with the subject of statements on the part of the assured affecting contracts of insurance, and which, before the question now raised for decision arose, had been made to apply to all statements made in the negotiation of contracts and policies of insurance of whatever kind.

The St. 1878, c. 157, does not appear to have been enacted in consequence of any recommendation by the insurance department, nor has any construction been given to that statute, or to Pub. Sts. c. 119, § 181, St. 1887, c. 214, § 21, or St. 1894, c. 522, § 21, by that department, or by this court, except so far as the St. 1887, c. 214, § 21, has been dealt with in the case of *Ring* v. *Phœnix Assurance Co.* 145 Mass. 426, and that of *Durkee* v. *India Ins. Co.* 159 Mass. 514. The case last cited has no bearing upon the present question, nor is that question governed by the decision in *Ring* v. *Phœnix Assurance Co.*

The statutes above referred to show a general intention on the part of the Legislature to make, in lieu of the rules which spring from the doctrines held in the law of insurance as to technical

warranties and representations, a statute rule by which to determine the effect upon the contract of all statements on the part of the assured, and also the effect of by-laws and similar matters which it might otherwise be contended would avoid or modify the contract.

The distinction in insurance law between warranties and representations is said by Baron Parke, in *Anderson* v. *Fitzgerald,* 4 H. L. Cas. 484, 496, to have been laid down by Lord Mansfield. In *Pawson* v. *Watson,* Cowp. 785, 787, decided in the year 1778, Lord Mansfield said : " There is no distinction better known to those who are at all conversant in the law of insurance than that which exists between a warranty or condition which makes part of a written policy and a representation of the state of the case. Where it is a part of the written policy, it must be performed. . . . Nothing tantamount will do, or answer the purpose. It must be strictly performed, as being part of the agreement. . . . So that there cannot be a clearer distinction than that which exists between a warranty which makes part of the written policy and a collateral representation, which, if false in a point of materiality, makes the policy void; but if not material, it can hardly ever be fraudulent."

And in *De Hahn* v. *Hartley,* 1 T. R. 343, decided in 1786, he said : " There is a material distinction between a warranty and a representation. A representation may be equitably and substantially answered ; but a warranty must be strictly complied with. . . . A warranty in a policy of insurance is a condition or a contingency, and unless that be performed, there is no contract. It is perfectly immaterial for what purpose a warranty is introduced ; but, being inserted, the contract does not exist unless it be literally complied with." And in the same case Ashhurst, J. says, " The very meaning of a warranty is to preclude all questions whether it has been substantially complied with ; it must be literally so."

These doctrines of the law of insurance have long been recognized in our decisions, and their effect was fully pointed out by this court before the enactment of St. 1878, c. 157. See *Houghton* v. *Manufacturers' Ins. Co.* 8 Met. 114, 120 ; *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 389, 401.

It is easy to see how an insurer, by multiplying immaterial

statements to be made by the insured, and giving to them by the wording of the policy the technical character of warranties, can, in the absence of any statute provision upon the subject, place the assured in a position in which it will be difficult, if not impossible, for him, although he has acted in good faith, to recover upon his contract because of some inaccurate statement on his part.   If he is held to have warranted the truth of a statement, its exact and literal truth is a necessary condition of his right to recover, however immaterial the statement may be, and however honest may have been his conduct.   In the opinion of a majority of the court it was the intention of the Legislature, by St. 1878, c. 157, to change this rule to some extent, and to enact in place of it one which should hold the contract valid unless the misstatement, if made in the negotiation of the contract, was made with an actual intent to deceive, or unless the misstatement was of a matter which actually increased the risk of loss; and this with reference to statements which may be said by the parties to be warranties, as well as those which were only representations.   Such was already the law as to statements not technical warranties.   As to mere representations the statute may well be held to be only declaratory, but as to warranties it made a new rule.   In the opinion of a majority of the court, it speaks in terms neither of warranties nor of representations technically so called, but deals with all misrepresentations made in negotiating the contract or policy.   Misstatements of fact, whether the statement is said to be by the parties a warranty or a representation, are equally misrepresentations, and are placed in each case upon the same footing by the statute which applies to them if the statements are called warranties by the parties no less than if they are mere representations.   And the same construction must, in the opinion of a majority of the court, be given to Pub. Sts. c. 119, § 181, and to St. 1887, c. 214, § 21, which was in force when the policy sued on was written.

It is not necessary at present to consider whether the statute would have any effect if an immaterial statement, declared by the application to be a warranty, instead of, as in the present case, being referred to in the policy, and thus brought into it by such reference only, were independently written out at length in the policy itself, and thus there declared to be a warranty upon

the exact truth of which the policy was conditioned and founded. The statements upon the falsity of which the defendant relies in this case are not incorporated into the policy except by reference to the application. The declaration of the applicant warranting the answers to be true was in his application made in the negotiation of his policy, and was within the operation of the statute. In the opinion of a majority of the court it was not taken out of the operation of the statute by the reference to the application in the policy, but it was "in consideration of the stipulations and agreements in the application herefor and upon the next page of this policy, all of which are a part of this contract."

In the trial of the present case a different view of the effect of the statute was held by the presiding judge, who ruled that because the statements of the assured were warranties the provisions of St. 1887, c. 214, § 21, did not apply. The plaintiff's exception to this ruling was well taken, and because the ruling was wrong the verdict for the defendant must be set aside and a new trial ordered.

We all agree that the ruling was correct that the assured was attended by a physician within the meaning of the question, "When and by what physician were you last attended, and for what complaint?" if he went to the office of a physician, told him that he had coughed and spit blood, desired him to make a physical examination, to which he submitted, receiving a prescription and paying for the services of the physician, and subsequently calling again at the physician's office and consulting him professionally and paying him a fee. The circumstances recited show that the assured was under the care and treatment of the physician for a complaint, and was as really attended by the physician as if the latter had seen the assured at his home.

*Verdict set aside and new trial ordered.*