MARGARET DOLAN *vs.* MUTUAL RESERVE FUND LIFE ASSOCIATION.

Bristol. March 7, 1899. — April 4, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Life Insurance — Foreign Corporation doing Business on Assessment Plan — Lex Loci Contractus — Statute — Misrepresentation — Presumption of Intent to deceive — Understatement of Age — Record of Naturalization — Evidence of Identity — Photograph — Payment into Court of returned Premiums.*

A policy of life insurance issued by a foreign corporation doing business on the assessment plan in this Commonwealth, under a contract made here through its agent here, and delivered and paid for here, is governed by our laws, and a provision on the back of the policy, that "this contract shall be governed by and construed only according to the laws of the State" under which the corporation was organized, does not affect the rights of the parties; and St. 1894, c. 522, § 21, providing that no misrepresentation made in the negotiation of a policy of insurance by the assured shall avoid it, "unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss," is applicable to this policy.

The defendant in an action upon a policy of life insurance is not entitled to have the jury instructed that there is a presumption from the falsity of a statement by the insured that there was an intent to deceive the insurer.

In an action upon a policy of life insurance, the jury should be instructed that "an understatement of age increases the risk of loss in a life insurance contract as matter of law."

The record of the naturalization of a person called Fardell Dolan, in the application for which his age is stated as several years greater than that given in an application for life insurance by a person called Farrell Dolan, both of the same city, is admissible in evidence, in an action upon the policy of insurance, in connection with other facts tending to show the identity of the assured with the applicant for naturalization.

It is within the discretion of the judge, at the trial of an action upon a policy of life insurance, to exclude a photograph of the assured, which was taken under unfavorable circumstances more than a year after the date of the policy by a person employed by the defendant, and when the condition of his health was different from that at such date.

If an insurance company has rescinded a contract of insurance in the lifetime of the assured upon the discovery of an alleged fraud, and refused to accept further premiums, it is not error, in an action upon the policy, to allow the plaintiff to pay into court the amount of the premiums which have been returned by the defendant.

CONTRACT, upon a policy of insurance for $2,000, issued by the defendant on the life of Farrell Dolan, and payable to the plaintiff, who was his wife. At the trial in the Superior Court, before *Gaskill*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*V. J. Loring*, for the defendant.

*C. M. Rice*, for the plaintiff.

KNOWLTON, J.    The plaintiff seeks to recover under a policy of life insurance on the assessment plan issued by a foreign corporation on the life of her husband, Farrell Dolan, for her benefit. The date of the policy is October 5, 1894. An important question is whether the statute of 1894, c. 522, § 21, is applicable to this policy. . This section is a re-enactment of previous legislation, which provides that " no oral or written misrepresentation made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to. deceive, or unless the matter misrepresented increased the risk of loss." It is settled that the term " misrepresentation " includes representations made in such form as to constitute warranties. *Levie v. Metropolitan Ins. Co.* 163 Mass. 117. *White v. Provident Savings Life Assurance Society*, 163 Mass. 108.

*Hogan* v. *Metropolitan Ins. Co.* 164 Mass. 448. It is also settled that, since the enactment of St. 1890, c. 421, § 27, this provision applies to contracts of insurance on the assessment plan. *Stocker* v. *Boston Mutual Life Association*, 170 Mass. 224. Although the defendant is a foreign corporation, it does business in this Commonwealth under our laws, and is subject to this provision as if it were a domestic corporation. Under the St. 1894, c. 522, §§ 77, 78, and St. 1896, c. 270, it could do business here only through constituted agents resident in this State. Its contracts are "subject to all general laws now or hereafter in force relative to the duties, obligations, prohibitions, and penalties of insurance companies, and subject to all laws applicable to the transaction of such business by foreign insurance companies and their agents." By § 78, cl. 5, and under similar previous legislation, it is obliged to "obtain from the insurance commissioner a certificate that it has complied with the laws of the Commonwealth and is authorized to make contracts of insurance." The exhibits show that it obtained such a certificate in 1885 and has ever since been acting under its authority. The contract was made in Massachusetts through its agent here, and the policy was delivered and paid for here. It is therefore governed by our laws. The provision on the back of the policy, that "this contract shall be governed by and construed only according to the laws of the State of New York," does not affect the rights of the parties. In the first place, where parties are contracting in this Commonwealth in regard to a matter which, under their contract, plainly would be governed by the laws of this State enacted on grounds of public policy, it is at least doubtful whether they can be permitted to nullify those laws in their application to their contract by a stipulation that the contract shall be governed by the laws of another State. See *The Brantford City*, 29 Fed. Rep. 373, 396; *The Iowa*, 50 Fed. Rep. 561; *The Hugo*, 57 Fed. Rep. 403, 411. However that may be, the St. 1894, c. 522, § 73, prohibits insurance companies contracting insurance under this act from issuing "any policy to a resident of this Commonwealth which does not bear in bold letters upon its face a plain description of the policy, so fully defining its character, including dividend periods and other peculiarities, that the holder

thereof shall not be liable to mistake the nature or scope of the contract." The effect of this is to make it impossible to change the whole character of a contract of insurance by a stipulation on the back of the policy. The same section provides that an application cannot be used to effect a contract of insurance, even though referred to as a part of the contract, unless a correct copy of it is attached to the policy. We are therefore of opinion that the representations relied on by the defendant, whether in the form of warranties or not, are immaterial in this suit, unless they were made with actual intent to deceive, or unless the matter represented increased the risk of loss. The jury were instructed to this effect, and they found the facts in favor of the plaintiff.

The eleventh request for an instruction, in regard to the presumption from the falsity of a statement by the insured that there was an intent to deceive the insurer, was rightly refused.

The exceptions to the refusal to give the other instructions requested, and to the instructions given, are governed by what we have said, except the request in regard to the representation about the age of the insured. We are of opinion that the jury should have been instructed, as requested by the defendant, that " an understatement of age increases the risk of loss in a life insurance contract as matter of law." The jury were permitted to find, as a matter of fact, that such a misstatement did not increase the risk, and to return a verdict for the plaintiff on that ground. It seems clear that death is likely to come more quickly to a person of a given age in sound health than if he were considerably younger, all other conditions being the same. It may be that in an insurance for a short term, or upon an endowment policy, the rule is not applicable to persons of every age and in all conceivable conditions ; but upon a policy for life we think it should be held, as matter of law, that a material increase of age increases the risk. See *Brown* v. *Greenfield Life Association,* 172 Mass. 498; *Rainger* v. *Boston Mutual Life Association,* 167 Mass. 109.

The error in the instructions in this particular would entitle the defendant to a new trial, except for the answers of the jury to the questions put by the presiding judge when they returned their verdict. The foreman was asked questions and he made

answers as follows: — " Q. On the question of age, did you find any false statement made by the deceased ? A. I think there was some doubt about that with some of the jury, but we had no doubt that there was no intent to defraud. — Q. That is not exactly an answer to my question. Did you find the age untruly stated, or that he stated it rightly ? A. It was the opinion of the jury as to the age, as I have said, that there was no intent to defraud the insurance company, and the jury did not consider there was testimony that proved he stated his age falsely. — Q. Then I understand you did not find, as matter of fact, that he made any false statement as to age. A. We did not." Neither of the counsel was present. Taking these answers literally, we think they must be treated as a finding that no false statement in regard to age was proved. At the same time, inasmuch as the jury did not formally consider the questions, and inasmuch as the foreman in each of his two answers containing affirmations emphasized the want of an intent to defraud, and inasmuch as other members of the jury were not personally asked for their views, we cannot help doubting whether the defendant may not have been harmed by the error in the instructions. If it were necessary to decide the question we should hesitate.

On another ground we think the defendant is entitled to a new trial. To show that the assured misrepresented his age the defendant offered in evidence, from the records of the Superior Court, an application for naturalization, duly signed, on which the court acted on October 4, 1873, in which the age stated was about five years greater than that given in the application for insurance. If the person who made this application was the assured, his application was plainly competent. The application for naturalization recited that the applicant, Fardell Dolan of Worcester, was born in the county of Cavan, Ireland, August 16, 1831. The application for insurance stated that the assured, Farrell Dolan of Worcester, was born in the county of Cavan, Ireland, on August 15, 1836. The oath on the naturalization papers was made before the clerk of the court in which the trial was had, and the defendant offered to prove that both of the witnesses were dead, and that no evidence of their handwriting could be found. It also offered in evidence the registry of voters of the city of Worcester, by which it appeared that on October

9, 1873, only five days after the naturalization referred to in the Superior Court, Farrell Dolan of Worcester was registered as a voter in that city. The name Fardell Dolan does not appear upon the registry. The name Farrell, as pronounced by an illiterate Irishman, would be very nearly, if not quite, *idem sonans* with Fardell, and there is evidence tending to show that the assured was illiterate. If the name in the naturalization papers were identical with that in the policy, that fact alone, in connection with the description contained in the papers, would be *prima facie* evidence of the identity of the person. *Hatcher* v. *Rocheleau,* 18 N. Y. 86. *Rupert* v. *Penner,* 17 L. R. A. 824 and note. It has often been held that there is evidence of identity in a close similarity of names in connection with other circumstances of description. See *Smith* v. *Gillum,* 80 Tex. 120; *Bogue* v. *Bigelow,* 29 Vt. 179; *Fink* v. *Manhattan Railway,* 15 Daly, 479; *Veasey* v. *Brigman,* 93 Ala. 548, and 13 L. R. A. 541 and note; *Barnes* v. *People,* 18 Ill. 52; *Millett* v. *Blake,* 81 Maine, 531; *Chiniquy* v. *Catholic Bishop of Chicago,* 41 Ill. 148. The records show that the name Farrell Dolan does not appear in the list of persons naturalized in the county of Worcester. This name is an uncommon one. The assured had lived in Worcester many years. According to the testimony of the plaintiff he had lived in this country only a few months before coming to Worcester, and he lived in Worcester constantly after his coming. According to the evidence, his name could not properly be put upon the registry of voters unless he was first naturalized, and the courts in Worcester County were the only State courts which had jurisdiction to give him a certificate of naturalization. It was the duty of the assessors of Worcester to make a list of all taxable inhabitants. His name was on their list, but the name Fardell Dolan was never there. We are of opinion that these facts, in connection with the other circumstances of the case, are evidence tending strongly to show that the assured was the person named in the naturalization papers who signed the application presented to the court, and that the rulings excluding the evidence from the consideration of the jury were erroneous. The record of naturalization in connection with the other evidence should have been submitted to the jury, with instructions that, if they found the identity of the assured with the appli-

cant for naturalization established, they should consider the application, otherwise they should disregard it. See *Commonwealth* v. *Kennedy,* 135 Mass. 543; *Commonwealth* v. *Preece,* 140 Mass. 276; *Commonwealth* v. *Robinson,* 146 Mass. 571; *Commonwealth* v. *Bond,* 170 Mass. 41; *Commonwealth* v. *Meehan,* 170 Mass. 362.

It was within the discretion of the court to exclude the photograph offered in evidence, and there is nothing to show that the discretion was not wisely exercised.* *Gilbert* v. *West End Street Railway,* 160 Mass. 403. *Blair* v. *Pelham,* 118 Mass. 420. *Harris* v. *Quincy,* 171 Mass. 472. *Carey* v. *Hubbardston,* 172 Mass. 106.

There was no error in allowing the payment into court of the premiums which had been returned by the defendant. The action of the defendant in rescinding the contract in the lifetime of the assured on discovery of the alleged fraud, and the defendant's refusal to accept further premiums, were a sufficient explanation of the plaintiff's possession of the money, and, if her case was made out in other particulars, she might pay this money to the defendant at any time.

In view of the rulings against the defendant to which we have referred, we are of opinion that a new trial should be granted.

*Exceptions sustained.*

---

* The evidence showed that this photograph was taken, under unfavorable circumstances, more than a year after the date of the policy by a person employed by the defendant, and when the condition of the health of the assured was different from that at such date.