## GLADYS J. KIDDER *vs.* SUPREME COMMANDERY UNITED ORDER OF THE GOLDEN CROSS.

Suffolk.    March 15, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Fraternal Beneficiary Corporation. Insurance*, Life. *Pleading, Civil. Estoppel.*

A misrepresentation, which is not a warranty, in an application to a fraternal beneficiary corporation for membership and insurance, unless made with actual intent to deceive or unless the matter misrepresented increased the risk of loss, does not avoid a certificate issued on the application.

Although by R. L. c. 119, § 22, the provision of R. L. c. 118, § 21, that no misrepresentation or warranty by the assured shall defeat a policy of insurance unless "made with actual intent to deceive or unless the matter misrepresented or made a warranty increased the risk of loss," does not apply to fraternal beneficiary corporations, that provision, so far as it relates to misrepresentations which are not warranties, is merely declaratory of the common law.

In an action against a fraternal beneficiary corporation by the beneficiary named in one of its certificates, the defendant contended that the certificate was void because the insured member upon whose death the benefit was payable had made misrepresentations in her application for insurance and membership.   It appeared that the insured in her application had stated that she had not been treated by a physician within the past twelve months; that she never had had any protracted illness; that she was in perfect health so far as she knew or believed; that she had not been obliged to consult a physician or lose any time from her usual occupation on account of sickness at any time during the past five years; that no physician ever had given an unfavorable opinion upon her life or health; and that no material facts bearing upon her life or health had been omitted or suppressed.   It further appeared that during the year preceding her application the insured had consulted a physician and had received medical advice and treatment for slight ailments which caused her to be confined to her bed for about eight or ten days, that, although she formerly had believed or suspected that a serious physical trouble existed, her family physician after an examination assured her to the contrary and she accepted and acted upon his opinion which was a correct one, that her occupation was that of a housewife and the evidence warranted a finding that it had not been interrupted by any long continued or severe sickness which rendered her incapable of supervision of the household.   *Held*, that the incorrect answers of the insured were representations only and not warranties, that it was for the jury to find under suitable instructions whether the incorrect answers were material or intentionally false, and that unless they were intentionally false or increased the risk they were no bar to the plaintiff's recovery.

The by-laws of a fraternal beneficiary corporation provided that any member who gained admission by reason of any false statements contained in his application for membership should on conviction be expelled, but that before such expulsion could be ordered the accused was entitled to be informed of the charges made against him and to be heard in defence.   An insurance certificate had been issued to a woman upon her application, and the corporation had recognized her as a member by receiving dues and assessments from her.   Thereafter, without any previous notice giving her an opportunity to be heard, in obedience to an order of the principal officer of the corporation authorized to act in its behalf, the subordinate commandery voted to return to this woman the amount previously paid by her for dues and assessments and to notify her that having gained admission through misrepresentation she was disconnected, but no tender ever was made nor notice communicated to her, because she was mortally sick and substantially unconscious at the time the vote was passed and until her death. In an action by the beneficiary named in her certificate to recover the amount of the insurance, the defendant asked for a ruling that if the defendant rescinded the contract and expelled or disconnected the insured from the order, it became her duty if she desired to continue her membership to exhaust by an appeal the remedies provided by the constitution and by-laws for reinstatement.   The ruling was refused.   *Held*, that the ruling was refused rightly; that if the expulsion, although declared without granting the member an opportunity to be heard, could be upheld as valid until suspended by an appeal, no effective notice of expulsion or disconnection having been given to the insured the attempted act of rescission never was perfected and there was no occasion for resorting to an appeal.

In an action against a fraternal beneficiary corporation by the beneficiary named

in one of its certificates, if the defendant relies on the defence that the insured had forfeited his membership by a failure to pay the regular monthly assessments, this defence must be pleaded specially and is not open to the defendant under an answer which as to this issue contains only a general denial.

In an action against a fraternal beneficiary corporation by the beneficiary named in one of its certificates, *whether* the defendant can set up the defence that the insured had forfeited his membership by a failure to pay or tender the regular monthly assessments, if the failure to pay or tender the assessments was after the defendant had declared that the membership of the assured was terminated and had ordered its subordinate commandery not to receive dues or assessments from the insured or from any person acting in his behalf, *quaere.*

CONTRACT by the beneficiary named in a benefit certificate issued by the defendant, a fraternal beneficiary corporation, upon the life of the plaintiff's mother, one Bertha L. Kidder.    Writ dated April 11, 1904.

At the trial in the Superior Court before *Stevens*, J. the plaintiff introduced in evidence the benefit certificate, the application for insurance signed by the insured, the medical examiner's report and the constitution and by-laws of the defendant, proved the death of the insured, and rested.

The defence relied upon was that the certificate was void by reason of *misrepresentations* made by the insured in her application and in her answers to the questions of its medical examiner, and also that the defendant, having discovered the alleged misrepresentations after the insured had been admitted to the order, had disconnected her from the order ; that it had a right so to disconnect her and that, as she did not appeal to the highest authority in the order, such expulsion was legal and she was not a member of the order at the time of her death, and consequently the benefit certificate issued to her was void.    The defendant further contended at the trial that the insured, having failed to pay or tender the assessment for April, 1903, had under the by-laws of the defendant ceased to be a member on May 1, 1903, and that she was not a member when she died.

The insured made her written application for insurance and membership on November 8, 1902; she became a member of the order on December 8, 1902, and died on May 26, 1903.

The insured stated in her written application for insurance that " she had not been treated by a physician within the past twelve months"; that she never had had any protracted illness,

or severe injury; that she was in perfect health so far as she knew or believed; that she had not been obliged to consult a doctor or lose any time from her usual occupation on account of sickness at any time during the past five years; that no physician ever had given an unfavorable opinion upon her life or health, and that no material facts bearing upon her life or health had been omitted or suppressed.

Dr. F. W. Plummer, a witness called for the defendant, testified that in April of 1901 Mrs. Kidder called at his office about her general condition. She then said she had been told that she had a fibroid tumor on the womb. He made an examination and found no evidence of such tumor, but found a slight discharge from a very mild case of leucorrhea. She appeared tired and overworked and the witness ordered a tonic and a simple wash for the discharge. She made five calls upon the witness at that time in April, May and June. In September, 1901, the witness again treated Mrs. Kidder, this time at her house. Mr. Kidder had been sick and the witness had treated him personally in the latter part of August of that year, and after his recovery he treated Mrs. Kidder who was worn out, he supposed, from nursing her husband. The witness testified with reference to this period that when he first went there he found Mrs. Kidder in bed, or, if not, he put her there, and that she was in bed eight or ten days possibly.

On cross-examination the witness among other things testified as follows:

" *Q.* Did you learn that any physician had given an unfavorable opinion of her health or her life? *A.* I suppose that that statement when she came to me the first time saying she had a fibroid tumor, — I presume that would be an unfavorable statement. I don't say, — he said, — she said the physician made such a statement to her. — *Q.* After your examination of her what was her state of mind on that? *A.* I think she accepted the statement that my examination was right. I suppose she may have had a wonder sometimes if I examined her fully. I refer to that because on the day of the operation she said, — ' You'll find out about the fibroid now for sure when you open me.' That is all the conversation that I know of."

The operation referred to was on January 9, 1903, in the early

part of an attack of peritonitis from which Mrs. Kidder died on May 26 of the same year.

Dr. Plummer further testified that he considered Mrs. Kidder an insurable risk when she first consulted him in the spring of 1901 and also after she recovered in September, 1901. He also testified that the illness in 1902 in his opinion began very soon before he was called on December 26; that it was no long suffering disease, but a new and acute disease, sharp and sudden.

He further testified that at the time of the operation on Mrs. Kidder in 1903 there were no.symptoms of any tumor ever having existed, or of any previous operation, and that none of the organs had been removed, but were all present. There were then no signs of any severe injury and no signs of any tumor or cancer.

Dr. C. W. McClearn, medical examiner for the defendant at Malden, who examined the insured for admission to the defendant, and who signed the medical examination, testified that he examined the insured when she applied for membership in the order, that at that time she showed no indication of disease and that he did not consider her in a run down condition, that he asked her the usual questions, and wrote the answers as she gave them and that he examined the questions and answers; that the application was filled out and had been signed by the insured at the time of his examination; that his acceptance of the insured was based upon his examination, her answers to his questions and her answers in the application. The witness further testified that, if he had known of the illness of the insured in the year 1901 as testified to by Dr. Plummer, he should not have accepted her as a risk but would have advised her to wait; that he would not have approved her application if she had told him what she had told Dr. Plummer; that the history of her condition as given by her was clear and showed no trouble, and that if she had told him that a doctor had told her that she had a fibroid tumor he should have told her to wait.

Dr. Godfrey Ryder, another witness for the defendant, testified that he first knew of Mrs. Kidder at the time of the operation on her on January 9, 1903, performed by Dr. Plummer and himself, and that in his opinion the disease from which she was suffering had been in existence a comparatively short time.

The material evidence as to the defendant's alleged disconnecting of Mrs. Kidder from the order, and as to the payment of the assessment of April 1, 1903, is stated in the opinion.

The defendant asked the judge to make the following rulings:

" The insured, having been asked in her application the question, — ' Have you been treated by a physician within twelve months,' and having answered in the negative, if the jury find that she has been so treated within the time, such misstatement by her in her application increases the risk of loss in a life insurance contract.

" The insured was ' treated by a physician within twelve months ' of her making application, if within that time she went to the office of a physician, desired him to make a physical examination to which she submitted, or received a prescription from a physician.

" The insured, having stated in her application for insurance, that she never had any protracted illness, or severe injury, or undergone any surgical operation, these statements, if untrue, increase the risk of loss as a matter of law.

" If the jury find that the insured, Bertha L. Kidder, had been obliged to consult a doctor at any time during the five years preceding her application, she having stated therein that she had not been obliged to consult a doctor ' during that time,' such misstatement increases the risk of loss and renders the contract voidable, and the same is true of her statement in the application that she had lost no time from her usual occupation on account of sickness during that time.

" If during the lifetime of Bertha L. Kidder, the defendant rescinded its contract of insurance with her and disconnected her from the defendant society and paid her back all premiums which she had paid it, it was her duty, if she desired to remain in the society, to exhaust all remedies which are provided by the constitution and by-laws of the defendant, and as she did not appeal from the decision of the local commandery as the by-laws provide, and did not exhaust all remedies provided by the defendant's rules, laws and constitution, she thereby became disconnected from the defendant order and upon such disconnection her insurance was forfeited and lost.

" Upon all the evidence in this case the verdict should be for the defendant."

The judge refused to make any of these rulings and gave other instructions.

The defendant also asked the judge to make the following ruling :

" Bertha L. Kidder, not having paid or offered to pay or tendered the assessment which became due and payable on April 1, 1903, before midnight on April 30, 1903, she thereby became disconnected from the commandery and from the defendant order on the first day of May, and said April assessment not having been paid at any time before her death (she having died on May 26, 1903) under the laws, rules and constitution of the defendant, the said Bertha L. Kidder forfeited all claim upon the insurance and benefit fund of the defendant and your verdict must be for the defendant."

The judge refused to give this ruling, and ruled that upon this point there was nothing for the jury to consider, and that the only thing for them to consider was whether or not misrepresentations had been made by the insured in her application.

The jury returned a verdict for the plaintiff in the sum of $528.42 ;. and the defendant alleged exceptions.

*W. H. Powers,* for the defendant.

*G. L. Dillaway,* for the plaintiff.

BRALEY, J.  The questions presented by these exceptions may be taken up in the order in which they appear in the record.  Among the most important is the refusal to give five requests for rulings that as matter of law the answers of the insured in her application which forms a part of the contract having been untrue, and the representations being material, the certificate of insurance either never attached, or was voidable at the election of the defendant.   Under St. 1894, c. 522, § 21, as amended by St. 1895, c. 271, now R. L. c. 118, § 21, which has been held to include fraternal beneficiary corporations, unless such misrepresentations were made with an actual intent to deceive or the matter misrepresented increased the risk, they are to be deemed ineffectual either to prevent the policies from attaching, or to avoid them.  *Stocker* v. *Boston Mutual Life Assoc.* 170 Mass. 224.   By St. 1890, c. 421, § 27,

now R. L. c. 119, § 22, under which the certificate in suit was issued, while this provision was made inapplicable to such insurance the doctrine of the common law was not changed, for the original statute as amended was only declaratory as to misrepresentations, and did not formulate a new rule except as to warranties. *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416, 425. *White* v. *Provident Savings Assurance Society*, 163 Mass. 108, 115. See *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 401. When considering and answering the questions involving her past and present condition of bodily health, it may be said that the insured must be presumed to have been cognizant of her physical history within the period to which the inquiries were confined, and also to have known whether she had consulted, or been treated by a physician. Yet if these answers were in the negative they are not made warranties, but being representations only they would not defeat the contract unless intentionally false and material to the risk. *Daniels* v. *Hudson River Ins. Co.*, *ubi supra.* Their falsity must be found, if at all, in the extrinsic evidence, which substantially came from the physician whom she consulted, and subsequently employed, and the medical examiner of the defendant, who, after an examination, approved the application, and accepted her as an insurable risk. During the year preceding the application, the insured consulted a physician, and also is shown to have received medical advice and treatment for slight ailments in connection with her general health, the condition of which had caused her to be confined to her bed for a few days, but whether these ills should be deemed occasional, or classed as protracted in character, depended upon inferences to be drawn from the evidence. In degree their difference is apparently so marked that the jury would be justified in finding that the applicant truthfully declared she had not suffered from any prolonged sickness, and the representations that her health was perfect, and that no material facts bearing upon the subject had been suppressed, could be found to rest upon her experience of a complete recovery from the attacks of temporary sickness, and also in her reliance upon competent medical opinion that she was not suffering from any organic disease. If from the testimony of the family physician it could be said that she formerly

had believed a serious physical trouble existed, yet it also appears that from his diagonsis this belief was groundless, and that she accepted and acted upon his opinion. Besides, this question was framed to cover actual not imaginary diseases, the supposed presence of which, until the sufferer is disabused of such belief by competent medical advice, is not uncommon. Where, however, an applicant has suffered from a disease so grave in its nature that generally it is recognized as having a tendency to shorten life, and fails to disclose the fact in answer to a question which calls for such information, it may be ruled as matter of law that as the risk is thus increased the policy is void. *Brown* v. *Greenfield Life Assoc.* 172 Mass. 498. *Rainger* v. *Boston Mutual Life Assoc.* 167 Mass. 109. So a misstatement as to age if there is a material increase of years subsequently shown has the same effect. *Dolan* v. *Mutual Reserve Fund Assoc.* 173 Mass. 197, 200. But where the insurer in reply to a question calling for the fact has not been informed of a disease which although serious may not have this tendency, it is for the jury to say whether the risk has been increased. *Hogan* v. *Metropolitan Ins. Co.* 164 Mass. 448. *Levie* v. *Metropolitan Ins. Co.* 163 Mass. 117. *White* v. *Provident Savings Assurance Society, ubi supra.* Within the last category also fall the answers to the questions relating to the consulting of physicians, or of treatment by them. The obtaining of medical advice or treatment under some circumstances may be indicative of such impairment of health as to make the patient an undesirable risk, or such acts may be only for the object of obtaining relief for common though not incurable complaints which do not result in any permanent physical derangement. It was for the jury to find under suitable instructions whether the incorrect answers to these questions were material or intentionally false. *White* v. *Provident Savings Assurance Society, ubi supra.*

There was a further inquiry in reference to her occupation which seems to have been that of a housewife, and here it also could have been determined that in so far as such a question was applicable her usual calling had not been interrupted in the sense that by reason of long continued or severe sickness she had been rendered incapable of supervision of the household or incapacitated from resuming her ordinary labor. These

requests, therefore, were rightly refused, and the instructions given fully and accurately stated the law.

The second exception is to a refusal to rule that if during the life of the decedent the defendant rescinded the contract, and expelled or disconnected her from the order, it became her duty if she desired to continue her membership to exhaust by an appeal the exclusive remedies provided by its constitution and general laws for reinstatement. By accepting the application, issuing the insurance certificate, and recognizing her as a member by receiving dues and assessments, the defendant became bound on the face of the contract at her death to pay to the plaintiff as beneficiary the benefit provided by its terms. *Commonwealth* v. *Wetherbee,* 105 Mass. 149, 160. *Wuerfler* v. *Order of Druids,* 116 Wis. 19. While this contract contained no provision for cancellation at the option of the defendant either with or without notice to the insured, it was provided by these laws that any member who gained admission by reason of any false statements contained in the application should on conviction be expelled, but before such expulsion could be ordered the accused was entitled to be informed of the charges made against him, and to be heard in his defence. Without any previous notice giving such an opportunity, and in obedience to an order from the principal officer of the defendant, who was clothed with authority to act in its behalf, the subordinate commandery voted to return the amount previously paid for dues and assessments, and to notify the decedent that having gained admission through misrepresentation she had been disconnected. But no tender was ever made or notice communicated, because at the time the vote was passed and until death she was mortally sick and substantially unconscious. If the action taken was irregular a member under the defendant's laws would not be called upon to appeal until notice of conviction and subsequent expulsion had been received. By reason also of this condition the attempt to rescind was not perfected, and the vote of disconnection, if treated as an act of rescission, and the notice given and tender made to her sister, but who is not shown to have been authorized to act in her behalf, were inoperative for this purpose. Pollock, Con. (7th ed.) 580. See *Howland* v. *Continental Ins. Co.* 121 Mass. 499. It is un-

necessary to express an opinion upon the validity of these proceedings, for if, without granting an opportunity of being heard before membership was declared forfeited, they could be upheld as valid until suspended by an appeal, no effective notice of disconnection having been given, there was no occasion for resorting to this remedy. Neither is any provision found that an appeal could be prosecuted in her behalf by a stranger, and this ruling also was properly refused. *Gray* v. *Christian Society,* 137 Mass. 329, 331. *Karcher* v. *Knights of Honor,* 137 Mass. 368, 372.

The third exception is to a refusal to grant a request, that a verdict be ordered in the defendant's favor because by the self executing action of one of its by-laws a failure by the decedent to pay or tender an assessment that had accrued during her sickness operated to dissolve her membership, and forfeited the insurance. While her complete physical and mental disability would not relieve her from an exact performance of this condition, a by-law embodying this specific purpose, which by reference is made a part of the certificate, holds a place in this form of insurance similar to a clause of forfeiture for a failure to pay the annual premium, after the first has been paid, as provided in contracts of regular life insurance. *Wareham Bank* v. *Burt,* 5 Allen, 113, 116. *Thompson* v. *Insurance Co.* 104 U. S. 252, 259. *Carpenter* v. *Centennial Mutual Life Assoc.* 68 Iowa, 453. *Yoe* v. *Masonic Mutual Benevolent Assoc.* 63 Md. 86, 93. *Commonwealth* v. *Wetherbee,* 105 Mass. 149. *McAllister* v. *New England Ins. Co.* 101 Mass. 558, 561. In either, such a provision is inserted for the benefit of the insurer upon whom consequently rests the burden of proving that by reason of non-compliance a forfeiture follows, either of the certificate, or of the policy. *Kingsley* v. *New England Ins. Co.* 8 Cush. 393, 404. *Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144. *Rice* v. *New England Mutual Aid Society,* 146 Mass. 248, 252. *Lyon* v. *Royal Society of Good Fellows,* 153 Mass. 83, 84. *Waterworth* v. *American Order of Druids,* 164 Mass. 574. *Campbell* v. *Knights of Pythias,* 168 Mass. 397, 400. *Petherick* v. *Order of Amaranth,* 114 Mich. 420, 423. *Ferguson* v. *Union Ins. Co.* 187 Mass. 8. *Harris* v. *North American Ins. Co.* 190 Mass. 361, 369.

But if under the present certificate lapse of membership by

a failure to pay the regular monthly assessments works a forfeiture of the contract, this defence is not open to the defendant as it has not been pleaded, and it cannot be raised under an answer which as to this issue contains only a general denial. R. L. c. 173, § 27. *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541, 543. *Orrell* v. *Hampden Ins. Co.* 13 Gray, 431, 434. *Thayer* v. *Connor*, 5 Allen, 25. *Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144. *Pitt* v. *Berkshire Ins. Co.* 100 Mass. 500, 503. *Perley* v. *Perley*, 144 Mass. 104, 107. *Freeman* v. *Travelers' Ins. Co.* 144 Mass. 572, 578. *Shea* v. *Massachusetts Benefit Assoc.* 160 Mass. 289. It, therefore, becomes unnecessary to determine whether after the defendant not only had unreservedly declared that the membership of the insured was terminated and the contract repudiated, but also had ordered the subordinate commandery, which was bound to obey its commands, not to receive further dues or assessments either from the insured or from any person acting in her behalf, further tender of performance within the time elapsing between the vote and her death had been waived, or whether the defendant had become estopped from making such defence. The exception to the refusal to give this ruling cannot be sustained, and the ruling given, that upon this issue there was no question of fact for the jury to determine, as they were only to decide whether false representations had been made, was correct.

*Exceptions overruled.*